[Civ. No. 7367.   Third Dist.   July 26, 1947.]

WALTER R. WOOCK et al., Appellants, v. WILLIAM E. SCHLINK et al., Respondents.

Charles L. Gilmore for Appellants.

Rutherford, Jacobs, Cavalero & Dietrich, Newton Rutherford and Stephen Dietrich for Respondents.

ADAMS, P. J.—Plaintiffs, appellants here, brought this action to quiet title to 40 acres of vineyard located near Lodi, in San Joaquin County. The complaint was in the usual form in such actions, merely alleging that plaintiffs were the owners and entitled to the possession of the land, that defendants claimed some interest therein, but that neither of them had any right, title or interest therein. Defendants answered the complaint, denying that plaintiffs were the owners of the land, and alleging that plaintiffs were the owners of an undivided half interest, and that defendants were the owners of the other undivided half interest. After trial of the issues the court made findings in conformity with the allegations of defendants' answer, and a decree was entered accordingly.

From the decree aforesaid plaintiffs have taken this appeal, setting forth in their opening brief three questions which they state include the points on appeal and show that the findings and the judgment are not supported by the evidence.

The three questions set out are as follows: "1. In a quiet title action, may evidence of fraud in the procurement of a deed be properly brought before and considered by the Court, absent any pleading of fraud in the complaint? 2. Is an antecedent promise as part of an oral agreement, never, at any time, performed by the grantee, sufficient consideration to validate a deed? 3. Does the physical delivery of a deed

absolutely bar, in all cases without exception, proof that no delivery was intended?"

Under the first heading appellants merely argue that in an ordinary quiet title action the plaintiff may introduce any evidence that may go to the validity of the title of a defendant. It is not contended by appellants that upon the trial of the cause they were in anywise restricted in the introduction of evidence, or that there was any ruling of the trial court to the contrary which is contended to be error. As far as this appeal is concerned, then, the question is purely academic and calls for no answer.

As for the second question propounded, a categorical answer would avail appellants nothing. Appellants assert that the evidence in the case shows without conflict that plaintiff Woock and defendant Schlink had an oral understanding and agreement before the property was acquired by Woock, "to not only go into a general grape brokerage business in the Lodi area, but likewise to acquire and operate the real property herein as a mutual business"; that defendant Schlink violated his promises, and by means of "wily machinations" obtained possession of the deed (of an undivided one-half interest in the property); that the case presents "a clear, clean cut case of a person obtaining interests in a valuable piece of property, where the only consideration was a promise, never at any time fulfilled, and a promise that was made without any intention of performing it"; and that "this is actual fraud."

Assuming, as plaintiffs contend, that their complaint is sufficient, and that the allegations of defendants' answer are sufficient—there being no contention to the contrary—the record shows that the findings of the trial court follow the allegations of the pleadings and that that court found that defendants are the owners of the undivided one-half interest which they claimed. While there are no specific findings regarding fraud or sufficiency of consideration for the deed from plaintiffs to defendant Schlink, it is not contended that the findings are deficient in this respect, or that plaintiffs requested other or different findings. We must assume, then, in support of the judgment, that the trial court concluded that the evidence relied upon by plaintiffs to show fraud and lack of consideration for plaintiffs' deed to defendants was insufficient, and that it found that the conveyance to defendants was valid. As counsel for appellants well knows, questions of fact are for the trial court in such an action,

and unless it can be said that there is no evidence, or reasonable inference from evidence, to sustain the findings of such court, an appellate court is powerless to reverse. (2 Cal.Jur. pp. 912-913.)

Therefore, when appellants pose to us the question as to whether an antecedent promise as part of an agreement never performed by the grantee is sufficient consideration to validate a deed, they assume that there was such an agreement, that as a part of same there was an antecedent promise on the part of defendant Schlink, and that there was no other consideration for the deed—all of which premises are impliedly negatived by the finding of the trial court in favor of defendants.

Appellants' third question, whether the physical delivery of a deed, without exception, bars proof that no delivery was intended, is based upon an assumption that the delivery of the deed executed by plaintiffs to defendant Schlink and by plaintiff Walter R. Woock delivered to the grantee was a qualified delivery. The record does not show that any question of qualified delivery of the deed was raised in the trial court by pleading or otherwise. But even if it was, the findings of the trial court impliedly deny any basis of fact for a conclusion that the delivery was qualified.

The arguments presented by appellants in their briefs are such as might properly have been, and probably were, directed to the trial court. But in view of the limitations imposed upon appellate courts as to determination of matters of fact and the obligation of such courts to indulge in every reasonable presumption in support of the judgments of trial courts, appellants' whole argument can be considered only insofar as it is pertinent to the question whether there is sufficient evidence in the record to sustain the findings of the trial court whether actual or implied.

Considering the evidence, in its aspects most favorable to the prevailing party, we cannot say that it is insufficient for that purpose. It shows that respondent Schlink was a broker engaged in purchasing and selling grapes. In the latter part of April, 1944, the appellants called on Schlink at his home in Stockton at which time Mr. Woock stated he was contemplating moving back to Lodi and was interested in finding something to do. Mr. Schlink explained to appellants what he had been doing during the 1943 season and Mr. Woock wanted to know if there wasn't a chance for him to come and work for Mr. Schlink. Oral arrangements were then made for Schlink and Woock to work together in purchasing and

selling grapes, independent of Schlink's personal brokerage business, and a sharing of commissions was agreed upon. Several days later appellants again called on Schlink at his home and stated that Mr. Seibel, the owner of the vineyard now in controversy, might consider selling it with the grape crop on it. Appellants were without means to handle the deal and sought the aid of Schlink, who agreed to cooperate. Appellants then procured from Seibel an option to purchase the vineyard with the crop thereon for $75,000, a down payment of $15,000 being required and an additional payment of $15,000 out of the 1944 grape crop. Schlink had been doing a grape business with wineries in Fresno, particularly with Morello's Winery owned and operated by E. Morello. At the solicitation of appellants, Schlink went to see Morello who agreed to lend the parties $16,000 for the purpose of acquiring the property. At that time Morello did not know and had never met Woock. Morello understood that the $16,000 was to be used by Woock and Schlink to purchase the vineyard. When Morello advanced the $16,000, Schlink withheld therefrom $100 to cover long distance calls and the expenses of his trip to Fresno to see Morello, and delivered the remaining $15,900 to Woock. Out of the $15,900 Woock made the down payment of $15,000 on the purchase price of the vineyard, and placed the remaining $900 in a trust account, as per his agreement with Schlink, to be applied on the expenses of operating the vineyard. During the conversations and negotiations between Woock and Schlink there was an oral agreement made between them that the title to the property would be vested in them in equal shares.

The vineyard was conveyed by John J. Seibel and his wife to the appellants by a deed dated June 3, 1944; and by a deed prepared by Mr. Woock, dated July 3, 1944, appellants conveyed to respondents an undivided one-half of the property. Woock testified that he personally delivered the deed to Schlink. That deed contained the following provision: "This deed is subject to any and all obligations of record and off record pertaining to the herein described property, and all further obligations are to be paid jointly by parties of the first and second part."

At the time Seibel deeded the vineyard to appellants, the latter had executed to Seibel their promissory note for $60,000 and secured the payment thereof by a deed of trust on the property. After the vineyard was thus conveyed to appellants, a contract in writing was made with Morello's winery by

Woock—but presented to Morello by Schlink—by which the 1944 grape crop, estimated at 400 tons, was to be sold to Morello's winery. Out of the proceeds from the crop $1,250 was to be applied to payment of costs of harvesting the crop, etc., and $15,000 was to be applied on the purchase price of the vineyard. After the grape contract had been made with Morello, only a part of the 1944 crop was delivered to Morello's winery because the grape market went higher than Morello could pay and Woock wanted to ship the grapes east to get a higher price. Thereupon, Morello called at the vineyard and there met and conversed with both Woock and Schlink. Woock said Morello's winery was not paying enough for the grapes and as he wanted to make more money he asked Morello if he would consent to Woock's shipping the grapes east because he could get at least $50 a ton more than Morello was paying. It was then agreed that the grapes could be shipped east and the proceeds, above $50 a ton, were to be divided equally between Woock, Schlink and Morello. In that conversation Woock told Morello that Schlink was his partner. On cross-examination by counsel for appellants Morello was asked if he knew at the time he made the crop contract with Woock that Woock and Schlink were partners and he replied: "They were buying the ranch in partners;" that that was the basis upon which he advanced the $16,000, and that when he advanced that sum it was understood it was to be used to purchase the property.

Because of the unusual provision in the deed from appellants to Schlink, the trial court permitted considerable testimony regarding what the respective parties intended and understood by such language. Woock explained that it was meant that the grantee should share in expenses of operation such as irrigating, pruning and picking the grape crop, taxes, interest on the note to Seibel for the unpaid balance of the purchase price, etc. There was also considerable testimony regarding the failure of Woock and Schlink to account to one another—most of which testimony might have been relevant in an action for accounting, but was probably irrelevant in this action to quiet title. The evidence shows that the parties had agreed that Woock was to receive $250 a month for managing the property, and that he deducted such amounts from the proceeds of the crop. Schlink apparently did not do any work on the vineyard, but he did arrange for trucks to handle the crop, and collaborated with Woock in the disposition of it.

Woock claimed that the agreement between him and Schlink provided that the former should receive one-half of commissions earned by the latter on grapes shipped, and that Schlink had failed to account to him for his share of same. There is likewise evidence that Woock failed to account to Schlink regarding the operation of the vineyard, that the latter employed an accountant to examine Woock's accounts in this connection, and that such examination revealed that Woock had used $5,000 of the proceeds of the vineyard to buy other property for himself alone.

In substance the evidence shows that there was negligence on the part of both in the matter of accounting to one another; but the trial court, in an opinion filed in the case, stated that the preponderance of the evidence did not indicate that Schlink was guilty of fraud. We agree with that conclusion, and are satisfied that the evidence supports the findings and judgment.

The judgment is affirmed.

Thompson, J., and Peek, J., concurred.

A petition for a rehearing was denied August 22, 1947, and appellants' petition for a hearing by the Supreme Court was denied September 22, 1947.